IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DANNY R. ROBINSON,

                Petitioner,

v.

DIANE SABTKA-RINE, Neb. Stat. Penitentiary, and SCOTT FRAKES,

                Respondents.

**8:14CV97**

**MEMORANDUM AND ORDER**

This matter is before the court on Danny R. Robinson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Filing No. 1 (Petition). A jury found Robinson guilty of first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a felon in connection with the 2001 shooting death of Daniel Lockett. *Id.* at 2; Filing No. 19-3 at 3 (Robinson III).[1] The state district court

---

[1] It is important to note that Robinson's case has come before the Nebraska Supreme Court on three different occasions. The Nebraska Supreme Court first heard Robinson's case in 2006 on a direct appeal of the convictions and sentences imposed. *State v. Robinson,* 271 Neb. 698 at 702, 715 N.W.2d 531 (2006) ("Robinson I"). In Robinson I, the Nebraska Supreme Court affirmed Robinson's convictions of first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a felon in addition to the sentences for use of a deadly weapon to commit a felony and use of a firearm by a felon. *Id.* at 738. However, the Court vacated Robinson's sentence of life imprisonment "without parole" and remanded the case to the trial court with directions to resentence Robinson to life imprisonment for first degree murder. *Id.*

The Nebraska Supreme Court again heard Robinson's case in 2012 when he appealed the state district court's denial of a second motion for postconviction relief and to have his appeal reinstated due to official negligence. Filing No. 19-2 at 3-4 ("Robinson II"). In a memorandum opinion in Case No. S-11-1112, the Court found that in addition to a request for postconviction relief, Robinson's request to reinstate his appeal due to official negligence was a claim cognizable under federal law. *Id.* at 5. The Court reversed and remanded the case to the district court to consider the motion. *Id.*

The Nebraska Supreme Court last heard Robinson's case in 2014 when he appealed from a state district court order denying his motion for postconviction relief after holding an evidentiary hearing. Filing No. 19-3 at 3 ("Robinson III"). In Case No. S-13-306 the Court affirmed the denial of Robinson's motion for postconviction relief, holding that the state district court did not err in denying relief on claims addressed at the evidentiary hearing. *Id.* at 6. The Court also found that Robinson did not timely appeal two claims that were denied without an evidentiary hearing, thereby barring the Court from considering any assignments of error related to those claims. *Id.*

initially sentenced Robinson to life imprisonment without parole on the first degree murder charge and to two consecutive sentences of five to ten years' imprisonment on the use and possession charges. Filing No. 19-1 at 7-8 (Robinson I). After a direct appeal to the Nebraska Supreme Court, the Court affirmed Robinson's convictions and sentences for the use and possession charges but resentenced Robinson to life in prison. *Id.* at 29. After an extended and careful review of the record, the court finds no violation of Robinson's constitutional rights and thus denies his Petition for a Writ of Habeas Corpus.

## I. FACTUAL BACKGROUND

The Nebraska Supreme Court summarized the relevant facts as follows:

> On January 13, 2001, Dupree Reed and his brother Terez Reed attended a party in Omaha, Nebraska. A confrontation occurred between two street gangs, and shots were fired. Terez died as a result. On the way to Terez' funeral on January 22, Robinson told Courtney Nelson and James Edwards that he thought Gary Lockett had murdered Terez.
> After Terez Reed's funeral, friends and relatives gathered at the home of his aunt. A few hours later, Dupree Reed left the gathering and got into a green Chevrolet Tahoe driven by Robinson. At trial, Dupree described three other people who were in the Tahoe by their gang names: Killer C (Nelson), Boomerang (Edwards), and B Dub (Antonio Witherspoon). Dupree stated that while he was riding in the Tahoe, Robinson said he knew who killed Terez. Robinson was referring to Gary Lockett, whose gang name was "Pipe." As the Tahoe passed a house located in North Omaha, Robinson said, "That's the house that they be at."
> Robinson parked the Tahoe, and he and Dupree Reed got out. They approached the above-mentioned house by crossing various yards. According to Dupree, he stayed back by the alley while Robinson jumped a fence and "went on the side [of the house] by the window." Robinson was standing on something, but Dupree could not see what it was. Dupree testified that Robinson was "[r]ight up close" to the house and was looking in the window.
> Dupree testified that as he and Robinson walked toward the house, he knew they were going to "shoot it up" because that is what they had said in the Tahoe earlier when they drove past the house. Dupree said that Robinson shot first and that he then started firing. Dupree had a .22-

2

caliber handgun, and he fired six or seven shots at the house.  He quit firing because his gun jammed, but Robinson was still shooting.  According to Dupree, when they returned to the Tahoe, "[Robinson] said, he'd kill us if we say anything."

Edwards testified that while he waited in the Tahoe, he heard numerous shots fired.  He heard different noises that did not sound like they all came from one gun.  Edwards said that after he heard the gunfire and saw flashes from the guns, Dupree Reed and Robinson came running back to the Tahoe.  When Robinson got into the Tahoe, Edwards saw a 9-mm Beretta gun in Robinson's hands.  Edwards noticed that Robinson's weapon had fired all its rounds because it was "cocked all the way back."  He said Reed had a .22-caliber "German-style looking gun."  Edwards claimed to be familiar with guns and to have fired them before.  Edwards told Robinson that he was not happy with Robinson, and Robinson said, "Don't tell nobody."  Edwards testified: "He, like, threatened to kill people or whatever."

Nelson testified that he met Robinson in 1993 and that at that time, Robinson claimed to be affiliated with the "Hilltop Crips" gang.  Nelson said he left the funeral reception for Terez Reed in the green Tahoe driven by Robinson.  He saw Robinson with a 9-mm handgun, and he saw Dupree Reed with a .22-caliber automatic handgun.

Daniel Lockett was the victim of the above-described shooting.  As he was bending down to put on his shoes in the living room of his mother's house in North Omaha, he was shot.  Lockett's sister, Teresa Mountain, who was also in the living room, heard at least 15 or 20 shots fired.  The gunfire which came through the side window in the front of the house sounded different than the shots she heard in the back.  She heard the shots in the front before she heard shots from the back.  After the shooting, Mountain shook Daniel, but he did not respond.  According to Mountain, Gary Lockett was not in the house at the time of the shooting.

Daniel Lockett died as a result of the incident described above.  He sustained four gunshot wounds: one to the right shoulder, two to the right side of his chest, and one to the right forearm.  One of the bullets passed through the upper lobe of Lockett's right lung and then through his heart.

Omaha police observed nine bullet holes in the window in the front of the house where the Lockett shooting occurred.  Shell casings from a 9-mm handgun and bullet fragments found at the scene were determined to have been fired by the same 9-mm weapon.  The bullets retrieved from Lockett's body were most consistent with having been fired from a 9-mm handgun.  The police suspected that Daniel Lockett's murder could have been in retaliation for the murder of Terez Reed.

Robinson was subsequently charged with first degree murder in the death of Daniel Lockett, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a felon.  Following a jury trial, Robinson was convicted and sentenced to life imprisonment without

> parole on the murder charge and two consecutive sentences of 5 to 10 years' imprisonment on the use and possession charges.

Filing No. 19-1 at 6-8 (Robinson I).

## II. PROCEDURAL HISTORY

In 2006, on direct appeal, the Nebraska Supreme Court affirmed Robinson's convictions on all three counts and the sentences for the use and possession convictions, but vacated the sentence of life imprisonment "without parole."[2] Filing No. 19-1 at 29 (Robinson I). The Court found that the "without parole" feature of the murder sentence was not authorized by statute and remanded the case with directions to the trial court to resentence Robinson to life imprisonment. *Id.* at 28-29. In March 2008, Robinson filed a motion for postconviction relief in which he made numerous claims of ineffective assistance of trial counsel. Filing No. 19-3 at 3 (Robinson III). In March 2009, the district court granted an evidentiary hearing limited to certain issues. *Id.* In February 2010, the district court concluded that Robinson failed to show that his counsel's performance was deficient. *Id.* at 4. The district court further noted that even if Robinson could show deficient performance by his counsel, he could not show any prejudice resulting from counsel's alleged deficient performance. *Id.*

In May 2011, Robinson filed a pro se motion he titled as a second motion for postconviction relief.[3] *Id.* In effect, Robinson sought reinstatement of his appeal by this motion. *Id.* Accordingly, the district court denied the motion, reasoning that a

---

[2] *See State v. Robinson,* 271 Neb. 698, 715 N.W.2d 531 (2006) ("Robinson I").

[3] *See State v. Robinson,* No. S-11-1112 (2012) ("Robinson II").

4

postconviction action was not the appropriate vehicle to request a reinstatement of the appeal from the denial of an earlier postconviction motion. *Id.* at 4-5. Robinson appealed this denial to the Nebraska Supreme Court. *Id.* at 5. The Court determined that although Robinson's motion was titled as a postconviction action, it included a request for reinstatement of his appeal due to official negligence, which is a claim cognizable under Nebraska law. *Id.* The Court reversed the denial of the motion and remanded the case to the district court to consider the motion. *Id.* Under its nunc pro tunc power, the district court reinstated Robinson's appeal from the February 2010 order in April 2013. *Id.* The district court denied this motion after an evidentiary hearing. *Id.* Robinson then appealed the state district court's decision to the Nebraska Supreme Court, who denied it in March 2014.[4] *Id.*

On March 19, 2014, Robinson filed a motion for rehearing with the Nebraska Supreme Court. Filing No. 19-19 (Motion Rehearing Brief Robinson III). The Court denied this motion as it was untimely filed. Filing No. 29 at 11 (Brief of Respondents). Robinson then submitted a petition for a writ of habeas corpus on March 21, 2014. Filing No. 1 at 174 (Petition).

### III. STANDARD OF REVIEW

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. See 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

---

[4] *See State v. Robinson,* No. S-13-306 (2014) ("Robinson III").

by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams,* 529 U.S. at 405-06. A state court decision involves an "unreasonable application" when it identifies the correct legal rule, but unreasonably applies it to the facts. *Id.* at 407. "A state court's application of clearly established federal law must be objectively unreasonable, not merely incorrect, to warrant the granting of a writ of habeas corpus." *Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (internal citations and quotation marks omitted).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong

6

case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. See *Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court . . . . Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The Eighth Circuit also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497 (internal citation omitted). A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* The Supreme Court agrees, stating:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an

7

> unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S.Ct. at 784.

A procedural bar occurs when a habeas petitioner fails to meet state procedural requirements for presenting federal claims, thus depriving state courts an opportunity to address those claims. See 28 U.S.C. § 2254(b)(1)(A). The Supreme Court recognizes "the importance of federal habeas corpus principles designed to prevent federal courts from interfering with a State's application of its own firmly established, consistently followed, constitutionally proper procedural rules." *Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013). "Those principles have long made clear that a conviction that rests upon a defendant's state law 'procedural default' (for example, the defendant's failure to raise a claim of error at the time or in the place that state law requires), normally rests upon 'an independent and adequate state ground.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–730 (1991)). "[W]here a conviction rests upon such a ground, a federal habeas court normally cannot consider the defendant's federal constitutional claim." *Id.*

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "The exhaustion doctrine, in other words, turns on an inquiry into what procedures are 'available' under state law." *Id.* at 847.

8

In Nebraska, "one complete round" ordinarily means that each habeas claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court. See *Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005). "The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq., is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights," however, "the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Sims*, 761 N.W.2d 527, 533 (Neb. 2009). "[O]n postconviction relief, a defendant cannot secure review of issues which were or could have been litigated on direct appeal." *State v. Bazer*, 751 N.W.2d 619, 627 (Neb. 2008).

"The doctrine barring procedurally defaulted claims from being heard is not without exceptions—[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Trevino,* 133 S. Ct. at 1917 (quoting *Martinez v. Ryan*, 132 S. Ct. 1309, 1315-16 (2012). A credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). The Supreme Court has applied this miscarriage of justice exception to overcome various procedural defaults, including "successive" petitions asserting previously rejected claims, "abusive" petitions asserting in a second petition claims that could have been raised in a first petition, failure to develop facts in state court, and failure to observe state procedural rules, including filing deadlines. *McQuiggin v. Perkins*, 133 S. Ct. at 1931-32 (2013) (citations omitted). The miscarriage of justice exception survived the Antiterrorism and Effective Death Penalty Act's (AEDPA) passage intact and unrestricted. *Id.* at 1932, 1934 (noting also the AEDPA reflects "Congress' will to modify the miscarriage

9

of justice exception with respect to second-or-successive petitions and the holding of evidentiary hearings in federal court"). A district court has discretion to stay a mixed petition (i.e., one that includes both exhausted and unexhausted claims) to allow a habeas petitioner to present his unexhausted claims to the state court in the first instance, then return to federal court for review of his perfected petition. *Day v. McDonough*, 547 U.S. 198, 210 n.10 (2006).

Under the AEDPA, "habeas relief is authorized if the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (quoting 28 U.S.C. § 2254(d)(1)). The AEDPA also authorizes habeas corpus relief if the state court adjudication of the claim resulted in a decision that was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court, "time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *Id.* at 460 (quoting *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013)).

Under § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Woodall,* 134 S. Ct. 1697, 1702 (2014) (quoting *Harrington v. Richter,* 562 U.S. 86, 103 (2011)). Section 2254(d)(2) requires that the federal court accord the state trial court substantial deference. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). Federal courts "may not characterize these state-court factual determinations as

unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Id.* (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–342 (2006) (ellipses in *Brumfield*).

## IV.   DISCUSSION

### A.   Robinson's Claims

In his petition, Robinson states numerous grounds for relief. This court found fourteen potentially cognizable claims in federal court. Filing No. 8 at 7 (Memorandum and Order). The court condensed and summarized the claims as follows:

> (1) Robinson was denied due process of law in violation of the Fourteenth Amendment when the trial court refused to grant a mistrial after a law enforcement officer testified that Robinson had been involved in gang-related crime; (2) Robinson was denied due process of law in violation of the Fourteenth Amendment when the prosecution failed to disclose information it had regarding Robinson's involvement in gang-related crime; (3) Robinson was denied due process of law in violation of the Fourteenth Amendment when, without first conducting a Rule 404 hearing, the trial court allowed the prosecution to present evidence that Robinson had set his vehicle on fire in an attempt to destroy evidence; (4) Robinson was denied due process of law in violation of the Fourteenth Amendment when the trial court precluded Robinson from conducting additional discovery concerning the statements of Courtney Nelson; (5) Robinson was denied due process of law in violation of the Fourteenth Amendment when the prosecution did not disclose to the jury that James Edwards had been offered a deal in exchange for his testimony; (6) Robinson was denied due process of law in violation of the Fourteenth Amendment when the trial court precluded Robinson from calling Gary Lockett and Terrell Reed as witnesses; (7) Robinson was denied due process of law in violation of the Fourteenth Amendment when the trial court precluded Robinson from presenting evidence that Terrell Reed and Keelan Washington's alibi statements were false; (8) Robinson was denied due process of law in violation of the Fourteenth Amendment when the trial court precluded Robinson from presenting the testimony of Victor Hill; (9) Robinson was deprived of his right to present a complete defense and denied due process of law in violation of the Fourteenth Amendment when the trial court excluded evidence of statements made by Terrell Reed; (10) Robinson was deprived of his

11

right to present a complete defense and denied due process of law in violation of the Fourteenth Amendment when the trial court excluded statements made by Victor Hill; (11) Robinson was denied due process of law in violation of the Fourteenth Amendment when the prosecution was allowed to present facts not in evidence during closing argument; (12) Robinson's right to due process of law, right to compulsory process, and right to confrontation were violated because he was precluded from introducing evidence of third-party guilt; (13) Robinson was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments on forty-two different grounds; and (14) Robinson was denied due process of law in violation of the Fourteenth Amendment when the appellate court determined it did not have jurisdiction to rule on Robinson's claims and refused to review the record for "plain error."

*Id.* at 1-7 (Memorandum and Order).

### B. Claims Three, Four, and Eleven

The court finds that Claims Three, Four, and Eleven are procedurally barred. First, with regard to the claim of district court error in allowing evidence of Robinson's attempt to destroy evidence by setting his car on fire, Robinson claims that his right to Due Process under the 14th Amendment was violated. Filing No. 1 at 15-17 (Petition). The government argues that because Robinson did not refer to a specific constitutional federal right, constitutional provision, constitutional case, or state case raising a pertinent federal constitutional issue in a claim before the state courts, he did not fairly present this claim to the state courts. Filing No. 29 at 16 (Respondents Brief). The court agrees. Because this issue could have been litigated under direct appeal, Claim Three has been procedurally defaulted. See *State v. Bazer*, 751 N.W.2d 619, 627 (Neb. 2008) ("[O]n postconviction relief, a defendant cannot secure review of issues which were or could have been litigated on direct appeal").

Second, with regard to the claim of district court error in denying Robinson's motion for further discovery and allowing the testimony of Courtney Nelson over an

objection under Neb. Rev. Stat. § 29-1929, Robinson contends the statute imposes a record keeping duty on police and prosecutors to create a database of police informants. Filing No. 1 at 19 (Petition). The government argues that it is actually state law and Nebraska courts' interpretation and application of Neb. Rev. Stat. § 29-1929 that is being challenged. Filing No. 29 at 17 (Respondents Brief). The court agrees. Although Robinson cites a Supreme Court case in arguing Claim Four, the district court did not act contrary to clearly established federal law in its own interpretation and application of Neb. Rev. Stat. § 29-1929. In interpreting and applying Neb. Rev. Stat. § 29-1929, the district court did not contradict any Supreme Court ruling. Thus, Claim Four is also procedurally barred. See *Williams v. Taylor*, 529 U.S. 362 (2000) (a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts).

Third, with regard to the claim that the district court erred in overruling Robinson's objection when the prosecutor presented facts not in evidence to the jury during the government's closing argument, Robinson claims that even if there is procedural default, cause and prejudice for any procedural default can be established by ineffective assistance of counsel. Filing No. 47 at 5 (Response to State's Answer). The government argues that the Nebraska Supreme Court was correct in finding that because Robinson failed to move for a mistrial, the issue was not preserved for appellate appeal, thus following a "firmly established and regularly followed state practice." Filing No. 29 at 18 (Respondents Brief). The court agrees. The district court

did not act contrary to any clearly established federal law. See *Williams v. Taylor*, 529 U.S. 362 (2000). Claim Eleven is also procedurally barred.

### C. Claims One, Two, Five, Six, Seven, Eight, Nine, Ten, Twelve, and Fourteen

In Claims One, Two, Five, Six, Seven, Eight, Nine, Ten, Twelve, and Fourteen, Robinson alleges that he was denied due process of law in violation of the 14th Amendment due to actions of the trial court, the prosecution, and the appellate court. Robinson specifically cites failure by the prosecution to disclose information, along with many instances in which the trial court precluded certain testimonies and evidence, as impeding his right to due process. Filing No. 8 at 1-3 (Memorandum and Order). Robinson further claims that the appellate court erred in determining that it had no jurisdiction over his claims and refusing to review the record for "plain error." *Id.* at 7. The government argues that these claims are without merit, as the decisions of the Nebraska Supreme Court regarding these issues were not based on an unreasonable determination of the facts in light of all the evidence presented in the state court proceeding, nor were the decisions contrary to clearly established federal law as determined by the United States Supreme Court. Filing No. 29 at 32, 37, 51, 68, 75. (Respondents Brief). After reviewing all of the claims, the court agrees with the government. Robinson failed to show that the trial court acted contrary to clearly established federal law by either applying a legal rule that contradicts the Supreme Court's prior holdings or reaching a different result from one of the Court's earlier cases despite confronting indistinguishable facts. *Williams,* 529 U.S. at 405-06.

### D. Claim Thirteen

14

In Claim Thirteen, Robinson alleges forty-two different grounds for ineffective assistance of counsel. Filing No. 8 at 3-7 (Memorandum and Order). Robinson cites several different instances in which his counsel failed to subpoena or interview numerous individuals, as well as several other instances in which his counsel failed to move to exclude certain evidence or testimony. *Id.* Alternatively, Robinson maintains that even if none of the forty-two grounds warrant a reversal when considered in isolation, all of the errors in the aggregate establish that he did not receive a fair trial. Filing No. 1 at 154 (Petition). Thus, Robinson contends that he must be granted a new trial. *Id.*

    1.    Law

When a petitioner claims ineffective assistance of counsel, he generally must establish: (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014) ("Under *Strickland*, we first determine whether counsel's representation fell below an objective standard of reasonableness. Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (internal quotations omitted)). "The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Hinton*, 134 S. Ct. at 1088 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance

was reasonable considering all the circumstances." *Id.* (quoting *Strickland*, 466 U.S. at 688).

A petitioner must rebut the presumption of correctness given to a factual determination made by a state court by "clear and convincing evidence." 28 U.S.C. § 2254(d)(2).  The Supreme Court intended this standard to be difficult to meet, in order to "preserve[ ] authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." 131 S.Ct. 770, 786 (2011).  "It bears repeating that even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.*

### 2. Procedurally Barred Grounds

#### a. Denied by State District Court

On March 13, 2009, the state district court denied an evidentiary hearing on numerous grounds which Robinson alleged ineffective assistance of counsel. Filing No. 20-5 at 7 (Supplemental Transcript Robinson III).  The court granted an evidentiary hearing on Grounds 4, 19, 20, 24, 25, and 39-42.  *Id.* at 8.  The court denied an evidentiary hearing on Grounds 1-3, 8, 9, 12, 14, 15, 17, 21, 26, 31-34, and 38.  *Id.* at 7. Robinson did not appeal to the Nebraska Supreme Court when the state district court denied these claims without an evidentiary hearing, and is thus precluded from raising these claims in a successive postconviction motion.  Grounds 1-3, 8, 9, 12, 14, 15, 17, 21, 26, 31-34, and 38 are procedurally barred.

#### b. Denied by Nebraska Supreme Court

In his postconviction appeal to the Nebraska Supreme Court, Robinson raised Grounds 20-22, 24, 38, and 39 as ineffective assistance of counsel.  Filing No. 19-16 at

16

9-10 (Robinson III Postconviction Appeal). The Court noted that in Robinson's request for reinstatement of his appeal, he did not allege an attempt to file a notice of appeal or that such a notice was lost due to official negligence. Filing No. 19-3 at 6 (Robinson III). The Court held the district court did not err in concluding that Grounds 4, 19, 20, 24, 25, and 39-42 were without merit. Filing No. 19-3 at 9 (Robinson III). Robinson filed a motion for rehearing following the decision in Robinson III, which was denied by the Nebraska Supreme Court as filed out of time. Filing No. 19-7 at 3 (Robinson III Docket). This precludes Robinson from raising these claims in a successive postconviction motion. Grounds 4, 19, 20-22, 24, 25, and 38-42 are procedurally barred.

>    3.    Fail to Meet <u>Strickland</u> Standard

All of Robinson's remaining grounds for ineffective assistance of counsel, Grounds 5-7, 10, 11, 13, 16, 18, 23, 27-30, and 35-37, do not meet the *Strickland* standard. Robinson did not show that these grounds would have caused a different result at trial, and thus cannot show his counsel's performance fell below an objective standard of reasonableness. The first prong of the *Strickland* test is not satisfied. Further, these grounds all involve matters tangential to Robinson's actual case. For the sake of completeness, because Robinson cannot show his counsel performed deficiently, he cannot show prejudice. Thus, Robinson fails to meet the standard set in *Strickland*. Grounds 5-7, 10, 11, 13, 16, 18, 23, 27-30, and 35-37 are without merit.

Accordingly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. *Estelle*, 502 U.S. at 67-68 (1991); see *Arnold, 675 F.3d at 1086* ("We do not second-guess the decision of a Missouri state court on Missouri law."). The Writ of Habeas Corpus was designed to liberate the

17

unlawfully imprisoned. The court finds no such unlawful imprisonment in Robinson's case.

IT IS ORDERED that Robinson's petition for writ of habeas corpus and request for an evidentiary hearing are denied. A judgment in conformity with this Memorandum and Order will issue this date.

Dated this 2nd day of September, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge